UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                        :

GLARA FASHION, INC.,                         :

                                     :

                          Plaintiff,      :         11 Civ. 889 (PAE)

              -v-                 :

                                     :        <u>OPINION & ORDER</u>

ERIC HOLDER, *Attorney General of the United States*,  :
and U.S. CITIZENSHIP AND IMMIGRATION      :
SERVICES,                               :

                                   :

                        Defendants.     :

                                   :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Defendants Eric Holder and the United States Citizenship and Immigration Services

("CIS" and, collectively, the "government") move for summary judgment as to all claims

brought by plaintiff Glara Fashion, Inc. ("Glara").  Glara's complaint seeks relief, alternatively,

under the mandamus statute, 28 U.S.C. § 1361, the Administrative Procedure Act ("APA"), 5

U.S.C. § 701 *et seq.*, and the Declaratory Judgment statute, 28 U.S.C. § 2201.  Glara's complaint

challenges the government's denial of Glara's petition for an H-1B nonimmigrant visa filed on

behalf of one of its employees, Yeo Sung Jung, and asks the Court to compel the government to

reopen consideration of, and approve, that petition.  For the following reasons, the government's

motion for summary judgment is granted as to all claims.

I.      **Background and Undisputed Facts[1]**

In April 2007, Glara petitioned for an H-1B visa for Yeo Sung Jung ("Jung") so as to enable it to employ her as a "fashion designer" (the "2007 Petition").  Ex. 1 to Oeltjen Decl. 1. Employers in the United States may petition for H-1B nonimmigrant visas on behalf of alien workers; such visas allow the worker temporary admission to the United States in order to "perform services . . . in a specialty occupation."  8 U.S.C. § 1101(a)(15)(H)(i)(b).  If the position in question qualifies as a "specialty occupation" and if the alien is qualified for that position, CIS may extend H-1B status to the alien for up to a total of six years, in three-year increments.  *See* 8 C.F.R. § 214.2(h)(13)(iii)(a); *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1153 (D. Minn. 1999).

Under the regulations implementing the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* ("INA"), a "specialty occupation" must meet one of the following four criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
(2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
(3) The employer normally requires a degree or its equivalent for the position; or

---

[1]  The Court's account of the underlying facts in this case is drawn from the administrative records of the proceedings arising out of Glara's 2007 and 2010 visa applications with respect to Jung.  Both of these administrative records were submitted by the government along with its motion for summary judgment.  *See* Exs. 1 & 2 to the Decl. of Natasha Oeltjen in Support of Defts.' Mot. for Summ. J. ("Oeltjen Decl.") (Dkt. 9).  Petitioner does not dispute the facts set forth therein, although it vigorously contests the conclusions and legal analysis.  Because this case arises under the APA, the Court's decision is based on the administrative record.  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal.  The entire case on review is a question of law.").  Accordingly, no Rule 56.1 Statement was required to be submitted by the parties.  *See Student X. v. New York City Dep't of Educ.*, No. 07-cv-2316, 2008 U.S. Dist. LEXIS 88163, at *33 (E.D.N.Y. Oct. 30, 2008) ("[T]he 56.1 Statement will not aid the court in its independent review of the [administrative] record.").

(4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)–(4).

In turn, the alien whom the petitioning company wishes to employ must meet one or more of these four related criteria:

(1) Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
(2) Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;
(3) Hold an unrestricted State license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or
(4) Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively responsible positions directly related to the specialty.

8 C.F.R. § 214.2(h)(4)(iii)(C)(1)–(4).

Glara's 2007 Petition on behalf of Jung asserted that Glara's "fashion designer" position was a specialty occupation, and that Jung was a qualifying alien worker. *See* Ex. 1 to Oeltjen Decl. 1–39. To this end, Glara stated that the fashion designer position had duties including conferring with sales and management executives, creating new clothing designs, and sketching drawings of women's apparel. *Id.* at 6. Glara further stated that the fashion designer position required, at a minimum, a bachelor's degree in a fashion, clothing or textiles major. *Id.* at 18–20, 31. As to Jung, Glara represented that she held a degree from the clothing department of Baewha Women's University College in Seoul, South Korea, and had more than 12 years of work experience as a designer in Seoul. *Id.* at 18–20. Glara asserted that Jung's degree was

[3]

equal to an associate's degree in fashion design in the United States and, viewed in combination

with her work experience, was equivalent to a bachelor's degree.  *Id.* at 21–22.

In April 2007, CIS issued a request for further evidence in support of Glara's H-1B

petition.  *Id.* at 40–41.  On July 13, 2007, Glara responded with additional information.  *Id.* at

41–61.  On July 19, 2007, CIS approved the 2007 Petition.  *Id.* at 1.

On or about June 1, 2010, Glara petitioned to extend Jung's H-1B visa for an additional

three-year period (the "2010 Petition").  *See* Ex. 2 to Oeltjen Decl. 16.  It appended to that

petition (1) an employment offer letter to Jung; (2) a description of Jung's proposed job duties;

(3) a letter from the President of Glara, Mr. Yong C. Kim, describing the caliber of applicants he

normally considered for the fashion designer position; (4) a copy of the educational equivalency

report it had submitted in connection with the 2007 Petition; (5) Jung's college transcript; and (6)

Glara's 2008 and 2009 tax records.  *Id.* at 22–78.

On July 13, 2010, CIS requested further evidence from Glara.  *Id.* at 79–81.  CIS

acknowledged that Glara was requesting an extension of an existing visa, not making a new

application with respect to a new applicant.  *Id.* at 80.  However, it noted, it was authorized to

examine petitions for extension to ensure, *inter alia*, that the prior approval was not based on

gross error.  *Id.*  As to that issue, CIS advised Glara that it did not find that the record of the 2007

petition persuasively established that the fashion designer position qualified as a "specialty

occupation."  *Id.*  It noted that the 2010–11 version of the Occupational Outlook Handbook,

published by the Bureau of Labor Statistics, indicates that employers of fashion designers

typically seek applicants with an associate *or* bachelor's degree in fashion design.  *Id.*  Because

an associate's degree would fall short of the degree requirements under the regulations

implementing the INA, CIS asked Glara to submit evidence sufficient to show that (1) a

[4]

bachelor's degree in some other specific field was normally the *minimum* requirement for the fashion designer position; (2) the position was sufficiently complex or unique that it could not be performed by a person with only an associate's degree; or (3) a bachelor's degree in fashion design was the standard *minimum* requirement for such a position at either Glara specifically, or in the industry generally.  *Id.* at 80–81.  CIS advised Glara that it needed to substantiate its claims as to these points by independent evidence or documentation.  *Id.* at 81.

In response, on August 18, 2010, Glara, through counsel, submitted a three-page letter from its president, Kim.  *Id.* at 82–84.  Kim stated that it was Glara's policy to hire only an individual with at least a baccalaureate degree.  *Id.* at 84.  He also stated that in New York City, a fashion designer who lacks such an education will not receive proper recognition from potential customers.  *Id.*  Glara also supplied a letter, slightly more than a page long, from Sun Young Min, the president of Johnny's Fashion Studio Corp., also situated on West 38th Street in Manhattan, which Mr. Kim termed a "comparable company."  *Id.* at 83, 85–86.  Min stated that, based on more than 15 years in the apparel industry, the position of fashion designer "is of a professional level" and typically required attainment or at least a bachelor's degree in clothing, design, or a textile major.  *Id.* at 85.  Glara also included copies of two job listings downloaded from the internet, each of which, Glara's counsel stated, was from "a company of comparable size and distinction to ours," seeking to fill a fashion designer position with a candidate possessing a bachelor's degree.  *Id.* at 88–92.  Glara also attached notices of H-1B visa approvals for other Glara employees.  *Id.* at 93–95.  However, the accompanying chart of Glara's employees reflected that Jung was the sole worker at Glara with the title "fashion designer."  *Id.* at 96–97.

On November 1, 2010, CIS denied the 2010 Petition.  *Id.* at 9–13.  Its decision noted that Glara's application sought to classify the fashion designer position as a "specialty occupation" but that, upon CIS's initial review, "it could not be determined that the proffered position could be considered a specialty occupation."  *Id.* at 10.  Accordingly, CIS stated, it had issued the July 2010 request for further evidence, seeking a submission from Glara which would contain sufficient evidence to demonstrate the existence of a "specialty occupation."  *Id.* at 10–11.

As to the merits, CIS first noted that it had alerted Glara that it needed to distinguish its fashion designer position from those fashion designer positions which, according to the Department of Labor, do not require a four-year bachelor's degree.  *Id.* at 11.  As to this point, however, Glara's reply "did not contain any evidence to show that the duties of the proffered position were more specialized and complex than those of fashion designer positions that may not require a baccalaureate degree."  *Id.*  Thus, Glara had failed to prove that the duties specific to the fashion designer position required attainment of a baccalaureate or higher degree.  *Id.*

CIS next addressed Glara's contention that it is company policy to hire only fashion designers with bachelor's degrees.  Glara "did not provide any evidence to support" the assertion that a baccalaureate or equivalent education was necessary to perform the duties of a fashion designer at Glara.  *Id.*  Although Glara had claimed that it had previously hired three fashion designers, all with bachelor's degrees, Glara "did not provide any evidence such as pay statements or copies of degrees and transcripts to support" that claim.  *Id.*  And, CIS stated, "[s]imply going on record without supporting documentary evidence is not sufficient for the purpose of meeting the burden of proof."  *Id.* at 12.

As to Glara's assertion that a bachelor's degree, at a minimum is required for a fashion designer in the industry, CIS found the materials that Glara had submitted in August 2010

[6]

inadequate to establish that fact.  With regard to the H-1B approvals for other employees of other

companies, they were immaterial, as "each petition must stand on its own merits."  *Id.*  With

respect to the job postings from the internet, they were inapposite:  the two companies seeking

employees in those postings were, respectively, a company "involved in the development,

manufacture, and sale of non-invasive orthopedics" and "a nationwide retail apparel company";

as a result "[n]either postings [sic] appear to indicate that the positions or organizations are

similar to your operations or similar to the proffered position."  *Id.*  As to the letter from Min of

Johnny's Fashion Studio, the representations therein were "not supported by any documentation

to establish [their] factual basis," and the letter was therefore entitled to little or no weight.  *Id.*

CIS thus found the additional materials insufficiently persuasive to conclude that a bachelor's

degree was the minimum requirement for a fashion designer in the industry.  *Id.*

In so holding, CIS explained that it is "not sufficient that [Glara] prefer[s] to hire a

fashion designer who has a bachelor's degree"; but rather, "[t]he degree must be required so that

the employee may apply a body of highly specialized knowledge to the occupation."  *Id.* (citing

INA § 214(i)(1); 8 C.F.R. § 214.2(h)(4)(ii)) (internal quotation marks omitted).  CIS also

discounted its 2007 approval of Jung's visa, stating that it "is not required to approve

applications of petitions where eligibility has not been demonstrated merely because of prior

approvals that may have been erroneous."  As CIS put the point, it "does not have the authority

to confer an immigration benefit when the petition fails to meet its burden of proof in a

subsequent petition."  *Id.*  Accordingly, CIS denied the 2010 Petition.  *Id.* at 12–13.

On November 29, 2010, Glara moved CIS to reopen and reconsider the petition.  *Id.* at 2.

It argued that it would be impractical for Glara to replace Jung, and that losing her would cause

Glara's "skill and experience capital [] and efficiency to decrease sharply."  *Id.* at 7.  It also

argued that CIS's reasons for denying the 2010 Petition were "incoheren[t]" and inconsistent given its approval of the 2007 Petition. *Id.* It further argued that CIS had wrongly faulted it for failing to provide documents corroborating its asserted policy to hire only those fashion designers with bachelor's degrees. *Id.* at 7–8. Finally, Glara argued that CIS's decision was at odds with *Young China Daily v. Chappell*, 742 F. Supp. 2d 552 (N.D. Cal. 1989). *Id.* Glara did not include any additional evidence with its motion.

On February 9, 2011, while its motion to reconsider remained pending before CIS, Glara commenced this action. It filed a complaint containing a petition for a writ of mandamus pursuant to 28 U.S.C. § 1361 and an action under the APA, both seeking to force CIS to reopen and grant the 2010 Petition.

On April 8, 2011, CIS denied Glara's motion to reopen and reconsider. *Id.* at 2. The denial first noted that although "a motion to reopen must state the new facts to be provided in the reopened proceeding and must be supported by affidavits or other documentary evidence . . . [t]he motion filed in this case did not assert the existence of new facts, nor did it include any new evidence." *Id.* CIS acknowledged Glara's argument that its decision was inconsistent with its 2007 decision, but explained that "every I-129 petition stands alone and is adjudicated on its merits." *Id.* It also disputed Glara's argument that, based on *Young China Daily*, it was improper for CIS to consider Glara's past hiring practices. *See id.* at 3 ("it does not follow [from that case] . . . that USCIS may never take such factors into account as part of its overall analysis."). CIS added:

> [A] position must meet only one of the criteria [under the implementing regulations] in order to qualify as a specialty occupation. The denial issued on November 1, 2010 addressed not only your past hiring practices, but also the fact that you were unable to show that the position met any of the four criteria [in the implementing regulations], either in the evidence submitted with your initial filing or in response to the [request for evidence].

[8]

*Id.* Finally, CIS noted that Glara's submission "does not provide new facts or evidence, nor does it provide grounds for reconsideration." *Id.*

On May 19, 2011, Glara filed an amended complaint in this Court, challenging both CIS's initial denial of the 2010 Petition and its order denying the motion to reopen. The amended complaint added a cause of action under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

On September 30, 2011, the government filed this motion for summary judgment. On October 30, 2011, Glara filed its opposition; on November 14, 2011 the government filed its reply.

In its motion, the government argued that the administrative record demonstrates that CIS's decisions as to the 2010 Petition were not arbitrary and capricious or an abuse of discretion, and that they were supported by substantial evidence. In response, Glara argues (1) that CIS's decisions on the 2007 and the 2010 Petitions are incompatible, reflecting a fluctuating, and hence arbitrary, standard; (2) that the evidence it supplied in support of the 2010 Petition was sufficient to satisfy the relevant standards; and (3) for both these reasons, CIS's denial was an abuse of discretion.

## II.    Discussion

### A.    Applicable Legal Standards

A motion for summary judgment may not be granted unless all of the submissions, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). Where, as here, a party seeks review of agency action under the APA and "the entire case on review is a question of law," summary judgment will

[9]

generally be appropriate. *See Citizens Against Casino Gambling v. Hogen*, No. 07-cv-451S, 2008 U.S. Dist. LEXIS 52395, at *84 (W.D.N.Y. July 8, 2008) (citing *Connecticut v. United States DOC*, No. 04-cv-1271, 2007 U.S. Dist. LEXIS 59320, at *2 (D. Conn. Aug. 15, 2007)). More specifically, "[t]he question whether an agency's decision is arbitrary and capricious . . . is a legal issue" amenable to summary disposition. *Citizens Against Casino Gambling*, 2008 U.S. Dist. LEXIS 52395, at *84 (citing *Connecticut v. U.S. Dep't of Comm.*, 2007 U.S. Dist. LEXIS 59320, at *2); *see also Univ. Med. Ctr. v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999) ("[T]he question whether [an agency] acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record—regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment (or in any other Rule 12 motion under the Federal Rules of Civil Procedure).").

The APA provides federal courts with jurisdiction to review "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.[2]  In APA cases, courts review agency actions under a deferential standard, under which such actions may only be disturbed if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

An agency abuses its discretion when it fails to present a rational explanation for its decision or if the decision is devoid of any reasoning. *See Zhao v. U.S. Dep't of Justice*, 265 F.3d 83, 93 (2d Cir. 2001); *Sinistovic v. Holder*, 429 F. App'x 37, 39 (2d Cir. 2011) (summary order). A decision is arbitrary and capricious "'if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

---

[2] Glara did not appeal CIS's decisions to CIS's Administrative Appeals Office. There is, however, no statutory exhaustion requirement: 8 C.F.R. § 103.3(a)(1)(ii) provides only that decisions *may* be appealed. The government does not argue that the Court lacks subject matter jurisdiction to resolve this dispute on the merits.

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *NRDC v. U.S. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Court's task is not to "engage in an independent evaluation of the cold record," *Guan v. Gonzalez*, 432 F.3d 391, 394–95 (2d Cir. 2005), nor to substitute its judgment for that of the agency. *NRDC*, 658 F.3d at 215. Instead, it is for the Court to determine whether the agency has "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *J. Andrew Lange, Inc. v. FAA*, 208 F.3d 389, 391 (2d Cir. 2000); *see also 41 N. 73 W., Inc. v. U.S. Dep't of Transp.*, 408 F. App'x 393, 399 (2d Cir. 2010) (summary order).

Additionally, courts "will not disturb a factual finding if it is supported by reasonable, substantial, and probative evidence in the record when considered as a whole." *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157–58 (2d Cir. 2008) (citing *Wu Biao Chen v. INS*, 344 F.3d 272, 275 (2d Cir. 2003)) (internal quotation marks and additional citations omitted). As a corollary, "when a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the 'substantial evidence' necessary to support the agency's challenged decision." *Id.* (citing *Zhou Yun Zhang v. INS*, 386 F.3d 66, 78–79 (2d Cir. 2004), *overruled in part on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007) (en banc)).

In this case, Glara's mandamus petition and its request for a declaratory judgment are each derivative of its request for review under the APA. That is because both are premised on the claim that CIS incorrectly denied the 2010 Petition and erroneously failed to reopen and reconsider that denial, and the APA prescribes the substantive standard by which those two

actions are judged. *See Castillo v. Rice*, 581 F. Supp. 2d 468 (S.D.N.Y. 2008) (declining

mandamus jurisdiction where petitioner had not shown right to agency action under the APA);

*All Aboard Worldwide Couriers v. AG*, 8 F. Supp. 2d 379 (S.D.N.Y. 1998) (entering summary

judgment against attendant declaratory judgment action based solely on analysis of APA claim).

Accordingly, the Court addresses, first, Glara's claims under the APA.

### B.      CIS's Denial of the 2010 Petition

#### 1.      Arbitrariness

Glara argues that CIS's denial of the 2010 Petition for an H-1B nonimmigrant visa was

arbitrary because CIS had previously granted the 2007 Petition, which involved an application on

behalf of the same employee for the same position.  It is undisputed that these two

determinations are inconsistent.  CIS does not, for example, seek to justify the denial of the 2010

Petition on new evidence obtained after 2007.  Furthermore, as the government concedes, "an

agency's unexplained departure from a prior course of action may raise arbitrariness concerns."

Gov't Br. 15 (citing *Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 148 (1st Cir. 2007); *Tapis Int'l*

*v. INS*, 94 F. Supp. 2d 172, 177 (D. Mass. 2000)) (Dkt. 10).

However, the law is clear that an agency is not bound to follow an earlier determination

as to a visa applicant where that initial determination was based on a misapplication of the law.

*Royal Siam*, 484 F.3d at 148; *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1317–18 (11th Cir.

2006); *Tapis Int'l*, 94 F. Supp. 2d. at 177; *Louisiana Philharmonic Orchestra v. INS*, 44 F. Supp.

2d 800, 803 (E.D. La. 1999).  Otherwise, an agency would be condemned indefinitely to err

anew each time the decision in question, here, a visa application, came up for renewal.  Put

differently, an agency's reconsideration and revision of an earlier outcome to conform it to the

law does not render its change of course arbitrary and capricious.  Consistent with this in the

[12]

context of visa applications, the INA squarely places the burden of proof for *each* visa application on the applicant.  *See* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa . . . If such person fails to establish to the satisfaction of the consular officer that he is eligible to receive a visa . . . no visa or other document required for entry shall be issued to such person.")  Thus, applicants are on notice that they cannot count on renewal of an H-1B visa application.

The issue therefore is whether CIS in this case adequately explained its departure from its prior course of action.  The record demonstrates that it did.  CIS, in its July 2010 request for further evidence, clearly alerted Glara that, although petitions "for the same beneficiary with the same employer may be given deference," approval is not assured and CIS is duty-bound to consider each petition individually, to assure compliance with the governing eligibility requirements.  *See* Letter from CIS to Glara, Ex. 2. to Oeltjen Decl. 80.  CIS also clearly cautioned Glara that it could not rest on the 2007 factual record, and that CIS's practice was to request additional evidence when, *inter alia*, "a prior approval may have been based on gross Service error."  *Id.*  And, CIS explained in detail to Glara the deficiencies it perceived in the 2007 Petition which could lead CIS to deny the 2010 Petition if left unremedied.  *Id.*  Notably, as a guide to Glara, CIS provided an itemized list of evidence that, if furnished by Glara, would have secured renewal of Jung's H-1B visa.  *Id.*  This evidence, in turn, logically tracked governing regulations.  *Id.*

Glara's failure to obtain renewal therefore did not result from arbitrary agency action, but from its failure or inability to comply with CIS's instructions.  Most notably, CIS found, and clearly explained, that Glara did not submit documentary substantiation of its claims that Jung's

position required a bachelor's degree or equivalent.  *See* Decision, Ex. 2. to Oeltjen Decl. 10–12

(explaining this deficiency in Glara's response).  The Court thus agrees with the government that

this was not "an *unexplained* departure" from past practice.  *Royal Siam*, 484 F.3d at 144.

Accordingly, CIS—because it reasonably explained its change of course to Glara, because its

reasons for changing course were anchored in the governing regulations, and because it supplied

a fair opportunity for Glara to augment its submission to meet CIS's requirements—did not act

arbitrarily in denying the 2010 Petition.

### 2.      Substantial Evidence

Glara next argues that it fully complied with CIS's July 2010 request for further

evidence, and the 2010 Petition should therefore have been granted.  Although not cast as such,

the Court reads Glara to argue that CIS's denial of the 2010 Petition was, therefore, not

supported by substantial evidence.  CIS based that denial on its determination that the fashion

designer position at Glara did not satisfy any of the four alternative standards necessary to

establish a "specialty occupation" under the INA.  The Court discusses each in turn.

### a)   8 C.F.R. § 214.2(h)(4)(iii)(A)(i) – A bachelor's degree or its equivalent is normally the minimum requirement for such a position.

Under 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), an employer may demonstrate that a job is a

"specialty occupation" by showing that "a baccalaureate or higher degree or its equivalent is

normally the minimum requirement for entry into the particular position."  CIS's July 2010 letter

to Glara requesting further evidence noted that the Department of Labor's 2010–11 Occupational

Outlook Handbook states that "in fashion design, employers usually seek individuals with a 2-

year *or* 4-year degree."  *See* Letter, Ex. 2 to Oeltjen Decl. 80 (emphasis added).  Because a two-

year degree would fall short of 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)'s requirements, CIS's letter

therefore reasonably requested evidence demonstrating that the position Glara sought to fill with

[14]

Jung was of the kind requiring a four-year, not a two-year, degree. *Id.* In denying the 2010 Petition, CIS noted that Glara's response had failed to make this showing. *See* Decision, Ex. 2 to Oeltjen Decl. 11 ("Your response does not contain any evidence to show that the duties of the proffered position are more specialized and complex than those of fashion designer positions that may not require a baccalaureate . . . ."). Stripped of conclusory statements, Glara's submissions fail to show any difference between the duties performed by a fashion designer with a two-year degree, and the duties of a fashion designer at Glara. Accordingly, the Court finds that CIS's determination as to this point was supported by substantial evidence. *See Shao*, 546 F.3d at 157–58.

> **b) 8 C.F.R. § 214.2(h)(4)(iii)(A)(2) – The degree requirement is common to similar jobs with similar companies, or Glara's position can only be performed by one with a degree.**

Under 8 C.F.R. § 214.2(h)(4)(iii)(A)(2), an employer may demonstrate that a job is a "specialty occupation" by showing that "[t]he degree requirement is common to the industry in parallel positions among similar organizations" or, in the alternative, "that its particular position is so complex or unique that it can be performed only by an individual with a degree." In attempting to make this showing, Glara supplied several documents to CIS: (1) Kim's letter representing that he hired only those with college degrees; (2) a letter from the president of a neighboring company, Johnny's Fashion Studio, stating that a fashion designer position requires the attainment of a bachelor's degree or its equivalent; and (3) two advertisements downloaded from the internet soliciting applications for fashion designer positions in California and Pennsylvania, respectively, both requiring a bachelor's degree. *See* Glara's Response, Ex. 2 to Oeltjen Decl. 82–92.

CIS's decision found these materials unpersuasive, for several reasons.  First, CIS noted, Kim's stated preference for hiring those with a degree, without supporting evidence that in fact his practice was to do so, was not entitled to any weight.  *See* Decision, Ex. 2 to Oeltjen Decl. 11–12.   Second, CIS stated that the factual basis for the statement from the president of Johnny's Fashion Studio that the writer had "never seen an individual hired for this important, high-level position [without] a bachelor's degree," was unclear and lacked documentation.  *Id.* at 12.  Finally, CIS stated that the job advertisements for the positions in California and Pennsylvania were with dissimilar companies.  *See id.* (noting that one company manufactured "non-invasive orthopedics" and the other company was "a nationwide retail apparel company.").  And CIS found Kim's stated preference for hiring those with a four-year degree insufficient, without corroboration, to demonstrate either Glara's policy to hire only baccalaureate-holders, or that Jung's position *could not* be performed by one without such a degree.  *Id.* at 11.

Having reviewed the record, the Court finds CIS's explanation procedurally satisfactory, in that CIS considered all evidence and measured it against the applicable standard, and substantively reasonable.  CIS was within its rights to discount as conclusory and/or insubstantial the evidence proffered by Glara, and to insist on a more substantial showing that Jung's position was of a nature that it could not be performed by a person lacking a four-year degree.  The Court therefore finds CIS's conclusion as to this point to be supported by substantial evidence.

### c)   8 C.F.R. § 214.2(h)(4)(iii)(A)(3) – The employer normally requires a degree or equivalent for the position.

Glara also contests CIS's determination that it failed to show that Glara normally required a bachelor's degree for the position.  *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(3).  In support of this argument, Glara submitted Kim's letter, copies of other H-1B visas which had been granted at other companies, and a chart showing the title, education level, and immigration status

[16]

of its other employees, the majority of whom held a bachelor's degree. *See* Glara's Response, Ex. 2 to Oeltjen Decl. 82–84, 92–97. CIS noted that Kim's conclusory letter was not corroborated by independent evidence, that the grant or denial of petitions relating to positions elsewhere was irrelevant, and that Jung was the only one of Glara's employees listed as a "fashion designer" (making Glara's chart beside the point). *See* Decision, Ex. 2 to Oeltjen Decl. 11–12.

In the Court's view, CIS acted within its discretion in finding that Glara had failed to carry its burden on this point. CIS's rational, point-by-point discussion of Glara's submission and its shortcomings satisfies the Court that its conclusion rested on substantial evidence. Indeed, the fact that there were no other fashion designer positions at Glara besides Jung's alone made it hard for Glara to meet the § 214.2(h)(4)(iii)(A)(3) standard, absent historical proof of the educational background of prior occupants of that position, which Glara did not supply. *Cf. Garcia v. Ziglar*, No. 02-C-2033, 2003 U.S. Dist. LEXIS 1998, at *8–9 (N.D. Ill. Feb. 11, 2003) (upholding CIS's finding that concrete evidence of the educational background of previous five hires for the *same* position was insufficient to show a "specialty occupation.")

### d)  8 C.F.R. § 214.2(h)(4)(iii)(A)(4) – The specific duties are so specialized as to require a bachelor's degree or equivalent.

Finally, Glara also disputes CIS's finding that it failed to show that the duties of the fashion designer position were "so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). The only evidence Glara submitted on this point was Kim's letter describing generally Jung's proposed job duties and opining that Glara "has quickly become the world's premiere designer and manufacturer of quality outerwear," and provides

[17]

"high quality apparel under recognized brands to retailers such as Macy's, Nordstrom and Saks."

Glara's Response, Ex. 2 to Oeltjen Decl. 82–83.  CIS gave little weight to Kim's description of

Glara's business as complex and high-profile, noting that the description was uncorroborated,

and that Glara had not identified any specific job duties that were complex and specialized.  *See*

Decision, Ex. 2 to Oeltjen Decl. 11.  Further, Glara had failed to show that Jung's fashion

designer position was different, or more specialized, than the fashion designer position identified

in the Department of Labor's handbook, as to which a bachelor's degree or its equivalent was *not*

required.  *See supra* Section II.B.2.(a).  The Court finds CIS's decision that Glara had not met its

burden on this point, based on CIS's refusal to credit Glara's *ipse dixit* submissions, to be

supported by substantial evidence.

In sum, the Court finds that CIS's denial of the 2010 Petition was not arbitrary, *see Royal*

*Siam*, 484 F.3d at 148–49, and was supported by substantial evidence, *see Shao*, 546 F.3d at

157–58, and therefore does not disturb that determination.

## C.      CIS's Refusal to Reopen and Reconsider the 2010 Petition

Glara also argues that CIS abused its discretion by denying Glara's November 2010

motion to reopen and reconsider the 2010 Petition.  For two reasons, the Court disagrees.

First, despite the requirement in 8 C.F.R. § 103.5(a)(2) that such a motion "state the new

facts to be provided in the reopened proceeding and be supported by affidavits or other

documentary evidence," Glara did not submit any new evidence or assert any new facts in

support of its motion.

Second, the Court finds unpersuasive the sole new argument in Glara's motion for

reopening and reconsideration—that the decision in *Young China Daily v. Chappell*, 742 F.

Supp. 552 (N.D. Cal. 1989) mandated granting Glara's application.  In *Young China Daily*, the

court found an abuse of discretion where the Immigration and Naturalization Service—CIS's predecessor—denied an H-1B visa *solely* on the basis of three irrelevant factors: (1) the size of the company; (2) the amount of the salary for the position; and (3) the company's prior hiring history where the company petitioning for the visa had never previously hired an employee for a "specialty occupation." 742 F. Supp. at 554. Glara asserted that *Young China Daily* established that CIS's partial reliance on Glara's hiring history made denying the 2010 Petition a *per se* abuse of discretion. *See* Motion, Ex. 2 to Oeltjen Decl. 7–8.

The Court disagrees. To begin with, *Young China Daily* is not binding on this Court, nor, necessarily, on CIS's Vermont Service Center, which analyzed Glara's 2010 Petition and its motion to reopen and reconsider. More important, Glara's broad reading of *Young China Daily* has been roundly criticized, and is not, in the Court's view, persuasive. That case has repeatedly been held to stand only for the narrow proposition that a past hiring history cannot be a dispositive factor when a company is creating a *new* position. In other words, if a company is hiring a fashion designer for the first time, the company cannot be faulted, and a visa thereby denied, for failing to show earlier hiring of fashion designers who held bachelor's degrees. *See EG Enters. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728, 737 (E.D. Mich. 2006) (citing *China Chef, Inc. v. Puelo*, 1993 U.S. App. LEXIS 32939 (6th Cir. Dec. 15, 1993) (table decision)). Finally, *Young China Daily* is inapposite, because Glara has represented that in the past it *has* hired a number of previous fashion designers, all with bachelor's degrees. *See* Glara's Response, Ex. 2 to Oeltjen Decl. 84. Glara's problem, as CIS recognized, was a failure to provide any proof of that claim. Thus, Glara's hiring history was legitimately considered by CIS in connection with the 2010 Petition—indeed, it was Glara that put that history at issue—but Glara failed to substantiate its claim as to that history. CIS's consideration of, and partial

reliance on, Glara's hiring history as to fashion designers was thus permissible.  CIS's decision

not to reopen and reconsider the 2010 Petition was therefore not an abuse of discretion.

### D. Mandamus

Glara's mandamus petition seeks, in substance, the same relief as its request for review

under the APA, and on the same grounds.  A writ of mandamus "may be awarded only if the

plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly

defined and peremptory duty to perform the act in question; and (3) there is no other adequate

remedy available."  *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008) (citing *Anderson*

*v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989)).  Because Glara has failed to demonstrate a

nondiscretionary right to have CIS approve the 2010 Petition or grant the motion to reopen and

reconsider the 2010 Petition, no such writ may issue, and the mandamus petition is, therefore,

denied.

### E. Declaratory Judgment

The Court also denies Glara's motion for declaratory judgment, pursuant to 28 U.S.C. §

2201.  The Declaratory Judgment Act "does not create a source of substantive rights" for parties,

*Dow Jones & Co. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 431 (S.D.N.Y. 2002).  Rather, it is a

procedural mechanism by which one may "'avoid accrual of avoidable damages to one not

certain of his rights and to afford him an early adjudication without waiting until his adversary

should see fit to begin suit, after damage has accrued.'"  *United States v. Doherty*, 786 F.2d 491,

498 (2d Cir. 1986) (Friendly, J.) (quoting *Luckenbach S.S. Co. v. United States*, 312 F.2d 545,

548 (2nd Cir. 1963)) (additional citations omitted).  Here, for the reasons set forth in this

opinion, Glara has failed to demonstrate the existence of any right that is being or is likely to be

infringed, and therefore there is no basis to grant Glara declaratory relief.

#                              #                              #

In so ruling, the Court does not minimize the very real impact of the visa denial on Jung personally and, quite possibly, on Glara's business. From Jung's and Glara's perspectives, no facts had changed to make Jung's visa application less worthy between 2007, when Glara's H-1B visa application for Jung was granted, and 2010, when CIS changed its view and denied the application for its renewal. However, this Court, like CIS, is duty-bound to apply the law, neutrally and unswayed by sympathy; and after careful review, the Court has concluded that CIS in 2010 reasonably, and, indeed, properly, applied the governing regulations. Judgment must, therefore, be entered in favor of the government.

## CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is granted. The Clerk of Court is directed to terminate the motion at docket number 8 and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 3, 2012
        New York, New York